UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
DEBORAH L. BOARDMAN
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
Fax: (410) 962-2577
MDD_DLBChambers@mdd.uscourts.gov

September 23, 2021

LETTER TO COUNSEL

RE:   *Julie Y. v. Kijakazi*
      DLB-20-2077

Dear Counsel:

On July 16, 2020, plaintiff petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claims for Disability Insurance Benefits and Supplemental Security Income. ECF 1. I have considered the parties' cross-motions for summary judgment and plaintiff's response. Pl.'s Mem., ECF 17; Def.'s Mem., ECF 19; Pl.'s Reply, ECF 22. I find no hearing necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the denial if the SSA employed correct legal standards in making findings supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the Commissioner's decision in part, and remand the case to the Commissioner for further consideration. This letter explains my rationale.

Plaintiff filed her claims for benefits on July 21, 2017, alleging in each an onset date of October 1, 2008. Administrative Transcript ("Tr.") 175–87. The SSA denied her claims initially and on reconsideration. Tr. 97–100, 127–30. An Administrative Law Judge ("ALJ") held a hearing on May 17, 2019. Tr. 32–72. Following the hearing, the ALJ determined plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 10–31. Because the Appeals Council denied plaintiff's request for review, the ALJ's decision constitutes the final, reviewable decision of the SSA. Tr. 1–6; *see Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); 20 C.F.R. § 422.210(a).

The ALJ found plaintiff severely impaired by "attention deficit hyperactivity disorder (ADHD), post-traumatic stress disorder (PTSD), neurodevelopmental disorder, and a learning disability." Tr. 16. Despite these impairments, the ALJ determined plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can perform simple, routine tasks. She

>       cannot perform work that requires a production rate pace.  She can have occasional contact with supervisors, and coworkers.  She can interact with the public less than five percent of the day.  She can occasionally climb ramps and stairs and never climb ladders, ropes, and scaffolds.  She can occasionally balance.  She can never be exposed to moving mechanical parts or unprotected heights.

Tr. 18.  After considering the testimony of a vocational expert ("VE"), the ALJ determined plaintiff could not perform her past relevant work but could perform other jobs existing in significant numbers in the national economy.  Tr. 24–25.  Therefore, the ALJ concluded plaintiff was not disabled.  Tr. 26.

On appeal, plaintiff challenges the adequacy of the ALJ's hypothetical to the VE on the grounds that the ALJ's inclusion of the phrase "production rate pace" prevents the Court from determining whether the ALJ's denial is supported by substantial evidence.  *See Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019).  I agree.  Accordingly, I remand, but I express no opinion as to plaintiff's ultimate entitlement to benefits.

In conducting substantial evidence review, courts look "to an existing administrative record and [ask] whether it contains 'sufficient evidence' to support the agency's factual *determinations*." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citation omitted) (emphasis added).  Thus, agency conclusions, stated in terms cognizable to the Court, must necessarily precede full substantial evidence review.  In *Thomas*, the Fourth Circuit held an ALJ's RFC assessment limiting the plaintiff to work not "requiring a production rate or demand pace" frustrated review because the Court lacked "enough information to understand what those terms mean[t]."  916 F.3d at 312.  Expressing no opinion as to whether the RFC findings were correct, the Court remanded for "a clearer window into" the ALJ's reasoning.  *Id.* at n.5 ("Without further explanation, we simply cannot tell whether the RFC finding . . . properly accounts for [the plaintiff's] moderate limitations in concentration, persistence, or pace.  On remand, the ALJ will need to establish for how long, and under what conditions, [the plaintiff] is able to focus . . . and stay on task at a sustained rate.").  And, while in *Thomas* the ALJ's utilization of the ambiguous term was one among many reasons the Court remanded, the Fourth Circuit has subsequently remanded solely for an ALJ's failure to define similar ambiguous terms in the RFC determination.  *See, e.g.*, *Perry*, 765 F. App'x at 873 (remanding for an ALJ's failure to define "non-production work oriented setting").

In this case, the ALJ determined plaintiff's RFC was limited to work that does not require a "production rate pace."  Tr. 26.  The term is directly analogous to the term the Fourth Circuit found ambiguous in *Thomas*, 916 F.3d at 312, and the Commissioner does not dispute the similarity of the terms, *see* Def.'s Mem. 6–16.  Rather, the Commissioner argues that here, unlike in *Thomas*, the record contains sufficient context such that the meaning of "production rate pace" is apparent.  *See Thomas*, 916 F.3d at 312; Def.'s Mem. 6–12.  The additional information the Commissioner argues elucidates the term's meaning is contained in the RFC analysis, the VE's testimony, and the Dictionary of Occupational Titles ("DOT").  These arguments, however, are not persuasive.

*Julie Y. v. Saul*
DLB-20-2077
September 23, 2021
Page 3

First, with respect to the RFC analysis, the Commissioner's detailed account of the RFC analysis makes clear only that plaintiff's impairments resulted in limitations that affect her ability to maintain pace. The Commissioner's argument is essentially that the conclusion's meaning is apparent by virtue of the evidence that led the ALJ to her conclusion. The logic is circular. It is undisputed that the duty to balance evidence and resolve conflicts rests with the ALJ. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in evidence.") (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The question is what the ALJ concluded with respect to this evidence and whether that conclusion was supported by substantial evidence. *See* 42 U.S.C. § 405(g). In this case, the ALJ's conclusion contains ambiguous terms, and the Court is unable to determine what RFC the ALJ determined plaintiff retained. *See Thomas*, 916 F.3d at 312.

Second, and with respect to the VE's testimony, the issue in this case is not whether the VE understood the ALJ's hypothetical. *See Cleta S. v. Saul*, No. CBD-19-2906, 2020 WL 6565250, at *5 (D. Md. Nov. 9, 2020). The issue here is whether the ALJ's denial of benefits is supported by substantial evidence. The ALJ's use of "production rate pace" prevents this Court from determining (1) the legal sufficiency of the ALJ's RFC determination, (2) the adequacy of the hypothetical the ALJ asked the VE, and (3) whether the Commissioner met her burden of showing the availability of work that is within plaintiff's capability and exists in significant numbers in the national economy.

Third, the Commissioner argues "that 'production rate pace' is directly contemplated by the [DOT], and has a clear enough meaning to be understood by vocational experts familiar with the same." Def.'s Mem. 19. This position is at odds with the holdings in *Thomas* and *Perry*, in which the Fourth Circuit found that terms analogous to "production rate pace" were unclear and frustrated appellate review. While it is true that "'production rate pace' is one of few terms discussed when defining light exertional work" in the DOT, Def.'s Mem. 19, the DOT does not define the term. Rather, it uses the term to explain that an occupation's required "production rate pace" might effectively elevate the exertional level from sedentary to light work. DOT, 1991 WL 688702 (Jan. 1, 2016). The DOT leaves undefined what pace would cause such an elevation—and what pace the ALJ concluded plaintiff was capable of in this case. Finally, and as discussed above, whether the VE understood the term is not the issue in this case. The issue is whether the Court can understand the term to determine whether the denial of benefits was supported by substantial evidence.

For the reasons set forth herein, plaintiff's motion for summary judgment, ECF 17, is denied, and the Commissioner's motion for summary judgment, ECF 19, is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is reversed in part due to inadequate analysis. The case is remanded for further proceedings in accordance with this opinion.

Despite the informal nature of this letter, it should be flagged as an opinion. A separate order follows.

*Julie Y. v. Saul*
DLB-20-2077
September 23, 2021
Page 4

        Sincerely yours,

        /s/

        Deborah L. Boardman
        United States District Judge